# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANICE MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. |
| v. | ) | 13-11363-FDS |
| | ) | |
| NATIONAL GRANGE MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

**SAYLOR, J.**

This is an action for breach of contract and violation of Massachusetts General Laws chapter 93A, section 11. Jurisdiction is based on diversity of citizenship.

Plaintiff Janice Murphy owns a house at 104 Bowdoin Street in Springfield, Massachusetts. Defendant NGM Insurance Company issued an insurance policy to Murphy covering the property.

The house had been the residence of Ms. Murphy and her husband until 2007, when they moved to Connecticut. They rented the house to tenants until December 2010. They then prepared the house to be sold, eventually entering into a purchase and sale agreement with a buyer in April 2011. On or about May 15, 2011—shortly before the sale closing was to occur—an arsonist set the house on fire, resulting in substantial damage.

NGM denied insurance coverage on the ground that the house had been vacant for more than sixty days prior to the fire, and that the policy expressly excluded coverage under those

circumstances.

Unbeknown to the Murphys, the mortgagee, Seterus, Inc., had hired a company called Safeguard Properties to perform periodic inspections of the property. A Safeguard employee prepared four reports indicating that the property was "occupied" during the relevant period. In October 2012, the Murphys became aware of those reports, and had the reports sent to NGM. NGM again denied coverage. Ms. Murphy then filed this lawsuit.

On April 30, 2014, NGM moved for summary judgment as to all claims. Plaintiff's opposition memorandum included, as Exhibit K, the various Safeguard inspection reports. NGM then moved to strike the exhibit.

The Court, while certainly sympathetic to plaintiff, has no realistic option but to uphold the clear policy language. Accordingly, the Court will grant defendant's motion for summary judgment on both the breach of contract claim and the chapter 93A claim. The motion to strike will be granted in part and denied in part as moot.

## I. Background

The facts are presented in the light most favorable to the non-moving party.[1]

### A. Factual Background

Janice Murphy owned a house at 104 Bowdoin Street in Springfield, Massachusetts. She purchased the property in 2005. She and her husband used the house as their principal residence until 2007, when they moved to Connecticut. Ms. Murphy rented the house from 2007 until December 2010, when the last tenants vacated the premises. The Murphys decided to sell the property and began repairs on the house in preparation for sale. A real estate agent showed the

---

[1] Defendant agrees to these facts for the purposes of summary judgment only.

house to prospective buyers on five separate occasions between February 2011 and April 2011.

Between January and March 2011, Mr. Murphy made visits to the property to remove furnishings and other items left behind by prior tenants. He also made repairs to the house on weekends between January and May 2011. He stayed at the house overnight on multiple occasions in the course of making repairs (although he could not provide the exact dates). When Mr. Murphy stayed overnight, he would bring an air mattress with him to sleep on and take it with him when he left.

Ms. Murphy made at least one trip to the property in early December 2010. She could not recall whether she made other visits to the property between December 2010 and May 2011. She never stayed at the property overnight during that period.

During the period in question, Ms. Murphy permitted Stephen P. Gray to store antique cars in a detached garage on the property. Mr. Gray reported that he saw people on the property only "very rarely."

Ms. Murphy entered into a purchase and sale agreement for the property in late April 2011. The closing was delayed because Ms. Murphy had to attain approval from the mortgagee, Seterus, Inc., for a short sale.[2]

On or about May 15, 2011,[3] shortly before the sale was finalized, someone set fire to the

---

[2] A short sale was required because the value of the mortgage exceeded the selling price agreed to by Ms. Muphy. Accordingly, Ms. Murphy had to wait to hear from Seterus that it would accept the proceeds of the sale in exchange for forgiveness of the mortgage.

[3] Although the exact date is not material, there is some inconsistency in the papers concerning the exact date of the fire. The complaint states that the fire took place "[o]n or about May 15, 2011." (Compl. 1). However, in her opposition papers, plaintiff states that the fire "occurred on May 16, 2011." (Pl. Opp. 1). In the transcript of plaintiff's call to report the fire, the insurance agent states, "Today's date is Monday, May 15, 2011." (Def.'s Mot. Summ. J., Ex. D). Within that call, the plaintiff states that the fire began "this morning." (*Id.*). The Court notes that May 15, 2011, was not in fact a Monday but a Sunday.

house, causing substantial damage.

On the day of the fire, Ms. Murphy called her homeowners' insurance carrier, NGM Insurance Company, and reported the loss. NGM's recorded statement of the call shows the following conversation:

> [Donna Burroughs of NGM]: Okay. Is the house rented right now or is it vacant?
>
> [Janice Murphy]: No, it's not . . .[4]
>
> DB: How long . . .
>
> JM: Uh, because we were in the process of selling it, we obviously weren't going to get new renters.
>
> DB: How long has it been vacant for?
>
> JM: Uh, a couple months, I'd say by the, uh, we had, it was being rented at the end of last year, we had non payment from our tenant so we had to kick them out, then we were trying to rent it, and then at the same time we tried to sell it, then we got this, um, I think January I talked to the, um, realtor. . .
>
> DB: Okay.
>
> JM: And then. . .
>
> DB: So it had been vacant since January?
>
> JM: Yeah.

(Def.'s Mot. Summ. J., Ex. D, 3).

The policy that NGM issued to Ms. Murphy for the property in question was a standard Massachusetts fire insurance policy. It contained a standard vacancy provision, as required by Mass. Gen. Laws ch. 175, § 99:

> Unless otherwise provided in writing, we will not be liable for loss caused by fire or lightning occurring while a described building is vacant, whether intended for occupancy by owner or tenant, beyond a period of sixty consecutive days for residential purposes of three units or less, and thirty consecutive days for all other residential purposes.

---

[4] Defendant's transcript of the recorded statement has a period instead of an ellipsis.

4

On August 12, 2011, NGM denied coverage based on the fact that the loss was caused by fire and the building had been vacant for more than sixty consecutive days.

Without Ms. Murphy's knowledge, the mortgage holder, Seterus, Inc., had hired Safeguard Properties to make periodic inspections of the property. Safeguard inspection reports indicate that for each inspection the property was "occupied," the property was "secure," and the electric, gas, and water were "on." (Pl. Opp. Ex. K). On October 23, 2012, upon discovering that Safeguard had performed and documented these inspections, Ms. Murphy had copies of the reports sent to NGM and asked for reconsideration of her claim. NGM again denied coverage.

The policy that NGM issued to Ms. Murphy also contained a mortgage clause:

> The word "mortgagee" includes trustee.
>
> If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
>
> If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
>
> a. notifies us of any changes in the ownership, occupancy or substantial change in risk of which the mortgagee is aware;
> . . .
>
> If we pay the mortgagee for any loss and deny payment to you:
>
> a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
>
> b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
>
> Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

(Def.'s Mot. Summ. J., Ex. A, 48). NGM paid Seterus $288,296.54 as the lienholder on the property.

## B. Procedural History

On May 9, 2013, Janice Murphy filed a complaint against NGM in Plymouth Superior Court for breach of contract and violation of Mass. Gen. Laws ch. 93A, § 11. On June 6, 2013 defendant removed the case pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

NGM has moved for summary judgment. In her opposition, plaintiff included copies of the Safeguard inspection reports as Exhibit K. NGM has moved to strike those reports on grounds of hearsay, lack of foundation, and relevance.

## II. Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P.

56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

As a general matter, only evidence that would be admissible at trial may be considered in connection with a motion for summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990). Plaintiff, as the proponent of the challenged evidence, "bears the burden" of proving admissibility. *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997).

### III. <u>Motion to Strike</u>

Defendant has moved to strike Exhibit K to plaintiff's memorandum in opposition, which consists of the various Safeguard inspection reports. It appears to be undisputed that Seterus hired Safeguard to perform periodic inspections of the property and to create reports containing the findings of those inspections. Four such reports were created by Safeguard. Defendant contends that the reports contain hearsay; are not properly attested to; have little, if any, relevance; and lack an appropriate evidentiary foundation.

Hearsay evidence is inadmissible for summary judgment purposes "unless it falls within one of the exceptions specified in the Federal Rules of Evidence." *Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc.*, 425 F.3d 67, 76 (1st Cir. 2005). One of the exceptions to the rule is for "records of a regularly conducted activity." *See* Fed. R. Evid. 803(6). Plaintiff contends that the inspection reports constitute such records. Defendant contends that even if the records fall within this exception, plaintiff has failed to meet the foundation requirements for the exception. Defendant contends that plaintiff has not shown that the reports were made by a person with knowledge, has not shown that the inspection reports were kept in the ordinary course of business, and has not presented the documents through an appropriate custodial

7

witness. *See* Fed. R. Evid. 803(6)(A), (B), and (D).

Defendant also contends that Exhibit K should be excluded because the reports have little probative value and any such value is outweighed by the potential for jury confusion. *See* Fed. R. Evid. 403. Specifically, defendant contends that the report contains assertions and conclusory statements, including "car in driveway," "personals visible," and "occupied" without explaining how those assertions and conclusions were reached.

There does not appear to be a genuine dispute as to the essential facts—for example, who was staying at the house during the relevant period; for how long; what furniture and possessions were stored at the house; whether the windows were broken; whether the lawn was mowed; and whether the utilities were still connected. The only real significance of the reports are the statements that the house was "occupied." But that is a conclusion—in this context, a conclusion with substantial legal consequences—not a fact.[5]

Rather than resolve the admissibility issue in its entirety, the Court will simply assume that the non-conclusory factual assertions in the report are true and that they would be admissible at trial. It will not, however, accept the conclusory statements that the house was "occupied." At a minimum, those statements would be excluded from any trial under Fed. R. Evid. 403 as misleading or unduly prejudicial. Because summary judgment should enter for defendant, even assuming the admission of the facts set forth in Exhibit K, the motion to strike will be granted in part (as to the conclusory statements) and otherwise denied as moot.

## IV. Motion for Summary Judgment

---

[5] By contrast, the statements in the report that there was a car in the driveway, or personal belongings visible, are contentions of fact. Those assertions, even if true, do not materially affect the question of whether the house was "vacant" at the time within the meaning of the policy.

A.      **Breach of Contract Claim**

Defendant has moved for summary judgment on the breach of contract claim, contending that there is no genuine issue of material fact as to whether the property had been "vacant" within the meaning of the policy for sixty consecutive days prior to the fire. The outcome of the motion turns on the meaning of the term "vacant."

The vacancy clause of the policy in question is a standard clause required by Mass. Gen. Laws ch. 175, § 99. The language in the clause is taken directly from the statute. *See id.* The general rule that a contract should be construed against the drafter (in this case, the insurer) is inapplicable because the vacancy provision is required by law. *Bilodeau v. Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984); *MacBey v. Hartford Acc. & Indem. Co.*, 292 Mass. 105, 108 (1935) ("The rule . . . that ambiguities in a policy of insurance must be resolved against the insurer is inapplicable to provisions prescribed by statute.").

The vacancy provision is based on the "commonplace observation that the risk of casualty is higher when the premises remain unattended" and the term "vacant" should be read "in that light." *Will Realty Corp. v. Transp. Ins. Co.*, 22 Mass. App. Ct. 918, 919 (1986) (sporadic entry did not prevent the premises from being "vacant"). *See Langill v. Vermont Mut. Ins. Co.*, 268 F.3d 46, 48 (1st Cir. 2001) (stating that the policy concern behind the standard vacancy clause is to ensure the "appearance of somebody being at home" to provide "effective anti-vandal protection.").

The facts in *Langill* are substantially similar to the present case. In *Langill*, the owners had moved out of the house. However, the owner worked at the house during the daytime every day for a few hours; there were "tools, a step ladder, two chairs, a mattress, frame, and box

9

spring, a radio, and an ashtray" at the house; on several occasions the owner went to the house at night to meet friends; and on one occasion the owner stayed overnight. *Id.* at 47-48. The utilities had not been shut off. *Id.* at 47.[6] The property was then destroyed by fire. The insurer refused to cover the loss on the ground that the property was "vacant."

The First Circuit observed that daytime repair work, without more, does not "convey the appearance of residential living," and that "random evening visits hardly provide the appearance of somebody being at home or effective anti-vandal protection." *Id.* at 48. It also noted that "none of the activities of [the property owner] or others changed the fact that at critical and likely times for vandalism and arson, there was no one in the house to discourage, see, or hear marauders, or to hear the activation of smoke detectors." *Id.* at 48-49. The court then held that the critical factor for determining whether a property is "vacant" is whether there is a "sustained presence of a resident, particularly in the hours of darkness," and that plaintiff had not established such a presence. *Id.* at 49.[7]

Here, plaintiff's husband worked on the property on weekends and stayed overnight sporadically. Most, if not all, of the furniture had been removed from the house. There may have been a car in the driveway at times, as noted in the Safeguard reports. As in *Langill*, however, that limited presence did not "convey the appearance of residential living" and, therefore, does not suffice to render the property occupied. *See id.* at 48. Furthermore, the

---

[6] Unlike in the present case, the house in *Langill* was only 35 to 40 feet from the owner's residence. *Langill*, 268 F.3d at 47.

[7] The court acknowledged that the term "occupancy" has been given "wide elasticity" in some cases, but declined to do so under Massachusetts law. *Id.* at 50 (explaining that the presence of a caretaker one day and one night per week would not be "considered relevant in interpreting the mandatory vacancy provision under Massachusetts law").

10

evening visits did not provide the "appearance of residential living" and no one was present on a sustained basis to discourage vandals or respond to smoke detectors. *See id.* at 47-48. The occasional presence of Gray, and the storage of his automobiles in a separate building, does not tip the balance. It is undisputed that plaintiffs left the property unoccupied at critical times, such as the "hours of darkness," which created an elevated risk of arson and vandalism. *Id.* at 49. In short, the undisputed facts show that the property was "vacant" from early December 2010, when the last tenants moved out, until the date of the fire in May.

The Court is very much sympathetic to plaintiffs' situation. It recognizes that it takes time to make repairs or improvements to real property to prepare it for sale. It also recognizes that it takes considerable time to complete a property sale—indeed, the entire process would rarely occur in less than 60 days. And it seems likely that many homeowners and small property owners will occasionally run the risk presented here (for example, after the death of a parent, when a suddenly vacant house is being readied for sale). Unfortunately for plaintiff, the law is well-settled, the contract language is clear, and there is no genuine issue of material fact. The property was "vacant" for a period exceeding sixty consecutive days prior to the fire, and therefore the fire damage was not covered by the policy. Defendant's motion for summary judgment as to the breach of contract claim will therefore be granted.

B. **Violation of Mass. Gen. Laws ch. 93A**

Both plaintiff and defendant acknowledge that the claim for violation of Massachusetts General Laws chapter 93A is derivative of the underlying breach of contract claim. Summary judgment as to the underlying contract claim forecloses a derivative chapter 93A claim. *Pimental v. Wachovia Mortg. Corp.*, 411 F. Supp. 2d 32, 40 (2006) ("Since Pimental has failed

11

to allege sustainable breach of contract or negligence claims, and the Chapter 93A claim is based upon the previous two claims, there is no basis for finding Wachovia liable under Chapter 93A.") *Macoviak v. Chase Home Mortgage Corp.*, 40 Mass. App. Ct. 755, 760 (1996) (holding that where plaintiff's chapter 93A claim was based solely upon an underlying fraud claim, summary judgment on that underlying claim was fatal to the chapter 93A claim). Summary judgment will therefore be granted as to the chapter 93A claim.

## V.     Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED, and defendant's motion to strike is DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:   October 16, 2014